# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LANCE ALAN M.,[1]                           )
                                            )
                    Plaintiff,              )
                                            )          CIVIL ACTION
v.                                          )
                                            )          No. 20-2575-JWL
KILOLO KIJAKAZI,[2]                         )
Acting Commissioner of Social Security,     )
                                            )
                    Defendant.              )
_____     )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Child Disability Benefits (CDB), Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) evaluation at step three of the sequential evaluation process or consideration of the opinion evidence, the court ORDERS that judgment shall be entered

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.    Background

Plaintiff protectively filed applications for CDB, DIB, and SSI benefits on December 18, 2017.  (R. 32, 355-76).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in considering the opinion evidence and in considering whether Plaintiff's condition was of listing-level severity.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e),

416.920(e). This assessment is used at both step four and step five of the sequential

evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining

at step four whether, considering the RFC assessed, claimant can perform his past

relevant work; and at step five whether, when also considering the vocational factors of

age, education, and work experience, he is able to perform other work in the economy.

Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the

burden is on Plaintiff to prove a disability that prevents performance of past relevant

work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter,

245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the

burden shifts to the Commissioner to show that there are jobs in the economy which are

within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th

Cir. 1999). The court addresses the errors alleged in Plaintiff's Social Security Brief, but

in the sequence they would be reached in applying the sequential evaluation process.

## II.     Step Three, Consideration of the Mental Disorder Listings

Plaintiff claims the ALJ's consideration whether his mental impairments meet or

medically equal the severity of a listing is unsupported by substantial evidence. (Pl. Br.

30-34). He argues this is so because the ALJ's decision referred to him "as a female on

at least 10 occasions," id. at 31, repeatedly stated activities Plaintiff is capable of

4

performing without pinpoint citation to record evidence, id., and erroneously concluded Plaintiff could respond to questions from healthcare providers despite documented difficulties doing so.  (Pl. Br. 32).  He argues the behavior the ALJ characterized as "drug-seeking" was "guileless" and "reflects his lack of insight, judgment, and ability to understand others' perceptions."  Id. at 32-33.  He argues the ALJ's finding "'there is no mention of any issues with the claimant's short or long term memory' is unsupported."  Id. at 33 (quoting without citation R. 37).  Finally, he argues the ALJ erred in finding "the medical evidence shows that the claimant appeared comfortable during appointments."  Id. (quoting R. 37).

The Commissioner argues the ALJ appropriately considered whether Plaintiff's mental impairments met or equaled a listing.  She argues the ALJ explained his evaluation of the four Paragraph B criteria and his explanation is supported by the record evidence.  (Comm'r Br. 9).  She argues Plaintiff's suggestion the court should reweigh the evidence and reach a different conclusion is beyond the scope of the court's judicial review, and the ALJ's reference to Plaintiff as a female "was irrelevant, as the ALJ correctly cited the evidence in Plaintiff's case."  Id. at 9-10.

### A.      The ALJ's Evaluation

The ALJ found Plaintiff's impairments "do not meet or medically equal the criteria of listings 12.04, 12.05, 12.06, 12.08, and 12.11."  (R. 37).  He explained his evaluation of each Paragraph B criterion (the court includes the ALJ's pronoun use):

> In understanding, remembering, or applying information, the claimant has moderate limitations.  The claimant alleged that she has difficulty remembering generally, understanding what is said to her, following

5

instructions, completing tasks, paying bills, going to doctor's appointments without reminders, taking medications without reminders, and shopping. However, the claimant also stated that she could prepare meals, shop, drive, read, and play games. In addition, the record shows that the claimant was able to provide information about her health, describe her prior work history, respond to questions from medical providers, and there is no mention of any issues with the claimant's short- or long-term memory.

In interacting with others, the claimant has moderate limitations. Here, the claimant alleged that she has difficulty engaging in social activities, getting along with others, dealing appropriately with authority, and spending time in crowds. However, according to her statements, the claimant is also able to shop, spend time with friends and family, attend church, and live with others. Finally, the medical evidence shows that the claimant appeared comfortable during appointments.

The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant has moderate limitations. The claimant contended that she has limitations in concentrating generally, focusing generally, following instructions, completing tasks, avoiding distractions, and working with others without distracting them. On the other hand, the claimant said that she is also able to drive, prepare meals, watch TV, read, play games, use the internet, and attend church.

Finally, the claimant has marked limitations in her ability to adapt or manage herself. The claimant asserted that she has difficulties handling change, bathing, managing her mood, and getting along with caregivers. That said, the claimant also stated that she is able to handle selfcare and personal hygiene and care for pets. Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene.

(R. 37-38). The ALJ explained that Listing 12.05A was not met or equaled because

Plaintiff "was able to complete intellectual testing and he is not dependent upon others

for personal needs" (R. 38) whereas Listing 12.05B was not met or equaled because

there is no evidence of "significant deficits in adaptive functioning" because the claimant testified he graduated high school in special education, was working at McDonalds part-time until he "chooses" to work fulltime, he currently has a roommate but has lived alone before, goes to the store 3-4 times a week and can figure out what to pay and whether cashier [sic] gave correct change, performs activities of daily living

including sweeping/dishes/laundry/meals, has his driver's license and passed the drivers' license test, reads magazines and mystery/missing person books, and uses the Internet for Amazon/EBay/ESPN/local news/Facebook.

(R. 39).

### B.    Step Three Standard

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling.  20 C.F.R. §§ 404.1525(a), 416.925(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If a claimant's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling.  Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if a claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, the plaintiff "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)).  "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing.  Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'"

Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Yuckert, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

### C.    Analysis

Plaintiff's condition does not meet or equal Listing 12.05A because he is cognitively able to participate (and has participated) in standardized intelligence testing, and Plaintiff does not allege otherwise. Listing 12.05B and each of the other mental impairments at issue here require an extreme limitation of one, or marked limitation of two, of the four broad areas of mental functioning—the Paragraph B criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (2019). As noted above, the ALJ found Plaintiff moderately limited in three areas of mental functioning and markedly limited in only one—the ability to adapt or manage oneself. (R. 37-38). Thus, to prevail in his step three argument Plaintiff must demonstrate that he is extremely limited in one area or markedly limited in one additional area of mental functioning. He has not done so.

Plaintiff correctly acknowledges "mistaken pronoun use does not by itself warrant reversal," but argues "it suggests the ALJ's decision was not well-considered." (Pl. Br. 31) (citing Gibbons v. Saul, 801 F. App'x 411, 416 (7th Cir. 2020)). While referring to Plaintiff as female rather than male may indicate less than ideal attention to detail on the part of the ALJ, it may also indicate only the opinion-writer's error in his or her review of

8

the ALJ's notes.  Moreover, in discussing Listing 12.05 the ALJ correctly used masculine pronouns to refer to Plaintiff.  (R. 38-39).  In any case, the court in <u>Gibbons</u>, after noting that Dr. Bilinsky erred in referring to the claimant as "she," noted several more-critical errors in Dr. Bilinsky's evaluation, which the ALJ in that case did not address.  801 F. App'x, 416.  The question here, as it was in <u>Gibbons</u>, is whether the ALJ's decision was properly considered and supported, not whether he applied the correct gender in addressing Plaintiff.

Plaintiff is correct that in discussing the four broad mental functional areas at step three, the ALJ did not cite to the record for evidence of activities or abilities he relied upon in finding Plaintiff has only moderate limitations in three of the mental areas and marked limitations in the ability to adapt or manage himself.  However, Plaintiff's argument ignores the totality of the decision at issue and what is required to overturn the Commissioner's findings of fact.  Although the ALJ did not cite the evidence regarding Plaintiff's testimony about his activities in his step three discussion, he did so elsewhere in the decision.  (R. 40, 42, 44) (citing "Hearing Testimony and Exhibits [sic] 9E," R. 64-80, 472-81).  The court's review of the decision and the evidence cited reveals the evidence relied upon by the ALJ is supported in the record.  Moreover, Plaintiff's argument that the objective evidence cited by the ALJ is erroneous ignores that the ALJ found significant limitations in Plaintiff's ability to function independently, appropriately, effectively, and on a sustained basis.

Later in the decision, the ALJ further explained that he found considerable limitations in Plaintiff's mental abilities, but not as severe as Plaintiff alleged:

the claimant's anxiety, ADD, learning disorder, bipolar disorder, depression, intellectual disorder (mild), and impulse control disorder cause moderate difficulties with understanding, remembering, or applying information; moderate difficulties with concentration, persistence or maintain pace [sic]; and marked difficulties in adapt and manage oneself that result in limitations, including able to carry out [sic] detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks in a work environment with no fast paced production requirements involving simple work-related decisions, and with only occasional judgment and work place changes. Further, the claimant's severe mental impairments also cause moderate difficulties with their [sic] ability to interact with others that result in limitations, including can occasionally respond to and have interaction with supervisors, coworkers and the general public. Considering all relevant factors, I find that claimant's allegations do not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in this decision. There is evidence in the record that the claimant's impairments are not as severe as alleged and do not prevent them [sic] from performing basic work activities. Therefore, I find that there is a lack of evidence in the medical record to support the claimant's alleged inability to perform basic work activities.

(R. 45) (emphases added). The point of the ALJ's evaluation is that although Plaintiff's ability to function independently, appropriately, effectively, and on a sustained basis in the areas of understanding, remembering, or applying information; of interacting with others; and of concentrating, persisting, or maintaining pace is only "fair," it is not "seriously limited," as is his ability to adapt or manage himself, and although he is "seriously limited" he does not demonstrate an inability to adapt or manage himself. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c, d) (2019). The ALJ was pointing out that although the evidence demonstrates functional limitations it does not demonstrate an inability to function independently, appropriately, effectively, and on a sustained basis in any of the areas. Although Plaintiff's view of the evidence is that it shows his limitations

are greater than assessed by the ALJ, he has not shown that the evidence compels finding greater limitations.

## III.   Opinion Evidence

Plaintiff makes numerous allegations of error in evaluating the opinion evidence.

He argues the ALJ failed to acknowledge or weigh the opinion of Ms. Braun, a school psychologist, or Plaintiff's Individualized Education Plan (IEP); failed to consider the statement of an agency employee who interviewed Plaintiff during his application process, or the statement of a social worker who provided therapy for him; and did not properly evaluate the medical opinions of Dr. Athey, who provided an independent evaluation of Plaintiff in December 2017 and supplemented his report in December 2018; Dr. Boyenga and Dr. McMasters, state agency psychological consultants who reviewed the evidence at the initial and reconsideration level; or Dr. Mintz, who provided a psychological evaluation for the vocational rehabilitation arm of the Kansas Social and Rehabilitative Services office in Topeka, Kansas.

### A.   Standard for Evaluating Opinion Evidence

Effective March 27, 2017, the Commissioner changed the regulations regarding evaluation of evidence for claims filed on or after that date.  In the new regulations, the Commissioner explicitly delineated five categories of evidence including objective medical evidence, medical opinion, other medical evidence, evidence from non-medical sources, and prior administrative medical findings.  20 C.F.R. §§ 404.1513, 416.913 (2017).  The regulations define objective medical evidence as "medical signs, laboratory findings, or both."  20 C.F.R. §§ 404.1513(a)(1), 416.913(a)(1) (2017).  "Other medical

11

evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3) (2017). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4) (2017).

The regulation defines "medical opinion" and "prior administrative medical finding:"

(2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: …

(i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

***

(5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether

12

you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record, such as:

      (i) The existence and severity of your impairment(s);

      (ii) The existence and severity of your symptoms;

      (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;

      (iv) Your residual functional capacity;

      (v) Whether your impairment(s) meets the duration requirement; and

      (vi) How failure to follow prescribed treatment (see § 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.

20 C.F.R. §§ 404.1513(a)(2, 5), 416.913(a)(2, 5) (2017).

The regulations include a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c, 416.920c (2017). The regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). The regulation provides that the SSA will consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(a)(c)(1-5),

416.920c(a)(c)(1-5) (2017).  It provides that the most important factors in evaluating

persuasiveness are supportability and consistency.  Id.

      The regulation explains that the decision will articulate how persuasive the SSA

finds all medical opinions and prior administrative medical findings.  20 C.F.R.

§§ 404.1520c(b), 416.920c(b) (2017).  The articulation requirement applies for each

source, but not for each opinion of that source separately.  20 C.F.R. §§ 404.1520c(b)(1),

416.920c(b)(1) (2017).  It requires that the SSA "will explain how we considered the

supportability and consistency factors for a medical source's medical opinions or prior

administrative medical findings in your determination or decision.  We may, but are not

required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of

this section, as appropriate, when we articulate how we consider medical opinions and

prior administrative medical findings in your case record."  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2) (2017).  The regulation explains that when the decision-

maker finds two or more medical opinions or prior administrative medical findings are

equal in supportability and consistency "but are not exactly the same," the decision will

articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5).  20

C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017).  Finally, the regulation explains that

the SSA is not required to articulate how it considered evidence from non-medical

sources.  20 C.F.R. §§ 404.1520c(d), 416.920c(d) (2017).

### B.    Non-medical Evidence

      The court begins by evaluating the ALJ's consideration of the non-medical

evidence, which here includes Plaintiff's IEP and the statement of T. Guyle, the agency

employee who interviewed Plaintiff during his application process.  First, and perhaps most importantly to this issue is the fact that for claims filed on or after March 27, 2017, as was Plaintiff's claim in this case, the regulations provide that the SSA is not required to articulate how it considered evidence from non-medical sources.  Id.  Thus, there is simply no requirement that the ALJ say anything about this evidence.

As to Plaintiff's IEP, the ALJ clearly considered that plan because he cited in the decision the Weschler Intelligence Scale for Children-IV (WISC-IV) scores (evidence from a medical source) which were included in the same exhibit as the IEP (R. 544-45) and were in fact also included in the IEP.  Id. 548.  Because Plaintiff points to no evidence in the IEP which compels a different result in the ALJ's decision more is not required.

The same result obtains for the statements of T. Guyle.  Plaintiff argues the "ALJ must consider third-party statements," but he "did not consider [T.] Guyle's third-party statement, and reversal is required."  (Pl. Br. 20) (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1529(c), 404.1513(a)(4), Soc. Sec. Ruling (SSR) 85-16, and SSR 16-3p.  The statement Plaintiff complains the ALJ did not consider was that Plaintiff "initially refused to wake up and his father broke into the room to force him awake.  [He] then cooperated."  Id. (quoting R. 397).

As Plaintiff suggests, T. Guyle was the SSA employee who interviewed Plaintiff to complete the "Disability Report – Field Office – Form SSA-367."  (R. 395-98).  In the "Observations" section of that report, T. Guyle observed no difficulties with any of the abilities listed in the form.  Id. at 397.  T. Guyle included two narratives in that section:

First, was noted "clmt almost seemed like he was falling asleep in the beginning of the appointment and was letting his father help him with almost all of the claim. he perked up towards the end and started helping with dates of work and med lists." In the section for noting observations of the claimant's behavior, appearance, grooming, and degree of limitation, T. Guyle noted, "clean and tidy clothes and hair. trimmed beard. due to computer glitch I was required to complete the application over the phone. clmt initially refused to wake up and his father broke into the room to force him awake. he then cooperated." (R.397). The situation presented here is not entirely clear, but it appears the form was begun during some form of a video conference wherein T. Guyle was able to observe Plaintiff and record the observations. Apparently a "computer glitch" occurred, and the remainder of the form was thereafter completed over the phone.

T. Guyle noted when the phone call was made Plaintiff refused to take the call but was forced to do so by his father. T. Guyle's narrative is non-medical evidence and the ALJ is not required to articulate his consideration of such evidence. Although Plaintiff asserts the statement is relevant, he provides no explanation suggesting the relevance of the statement to a finding of disability or demonstrating how it compels a different result in the Commissioner's decision. There are many reasons an individual may refuse to take a phone call. And there are many reasons or ways a friend, spouse, or relative may "force" the individual to take the call. Such a scenario does not suggest the individual is mentally impaired or unable to perform gainful activity. Plaintiff suggests that because the ALJ didn't discuss this evidence he didn't consider it. But the ALJ noted numerous times in his decision that he had considered all the evidence. (R. 33, 35, 39, 40, 44). And the

16

court's "general practice, which [it] see[s] no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter." Hackett, 395 F.3d at 1173 (citing United States v. Kelley, 359 F.3d 1302, 1304-05 (10th Cir. 2004) (district court must consider certain factors before imposing prison time for probation violation, but court need only say that it has done so); and Andrews v. Deland, 943 F.2d 1162, 1170 (10th Cir. 1991) (refusing to "look behind a district court's express statement that it engaged in a de novo review of the record")).

## C.    **Medical Source Evidence**

Plaintiff argues it was error for the ALJ to fail to evaluate the persuasiveness of Ms. Braun's opinion or the school's IEP.  (Pl. Br. 19).  Ms. Braun's findings to which Plaintiff refers are: "borderline perceptual reasoning and an IQ at the tenth percentile, … [and] 'skills in speed of mental problem-solving, attention, and eye-hand coordination are in the Extremely Low range.'"  Id. at 18 (quoting R. 545).  These findings, as the results of psychological testing, are either medical signs, and laboratory findings, or clinical findings.  They are therefore either "objective medical evidence" or "other medical evidence."  20 C.F.R. §§ 404.1513(a)(1, 3), 416.913(a)(1, 3).  But they are not a medical opinion.  As noted above, the ALJ considered these test results and explained how he had considered them.  (R. 39).  As Plaintiff suggests, the IEP stated his condition warranted extra time on tests, repetition, and that he may benefit from a structured outline to assist him in notetaking.  (Pl. Br. 18) (citing R. 548-49).  However, while the IEP contains medical evidence (psychological, vision, and hearing test results), the record provides no indication that it is medical evidence itself or that it contains an opinion from Ms. Braun

(she is not mentioned in the IEP).  Rather, it suggests it is an educational plan reached in a meeting between the student (Plaintiff), his parents, and certain of his teachers and is based upon the opinions of the participants after considering other input—the results of psychological, vision, and hearing testing done on the plaintiff.  (R. 548-68).  Because Plaintiff points to no medical opinion from Ms. Braun, it is not error that the ALJ did not state how persuasive he found such "opinion."

Plaintiff's therapist, Ms. Reynolds, as a Licensed Specialist Clinical Social Worker (LSCSW) is not an "acceptable medical source," as Plaintiff acknowledges.  But she is a medical source and her opinion would be a medical opinion.  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2017).  However, Plaintiff does not point to an opinion of Ms. Reynolds the persuasiveness of which the ALJ should have evaluated.  Rather he cites symptoms, findings, and a prognosis recorded in Ms. Reynolds treatment records which he argues the ALJ did not consider.  While the ALJ did not state he considered Ms. Reynolds's treatment records, he clearly considered them in that he cited to Exhibit 8F (R. 709-63) which included Ms. Reynolds's records and cited to a range of pages in that exhibit which included one of Ms. Reynolds's treatment notes.  (R. 41) (citing Ex. 8F/1-17, specifically, R. 723-25).  The closest Plaintiff comes to citing an "opinion" of Ms. Reynolds is his assertion that she "opined he 'has a desire to work but is unable to do so due to low cognitive ability.'" (Pl. Br. 21) (quoting R. 745).  The statement quoted actually appears in the record at 746 under a section of Ms. Reynolds's notes listing Plaintiff's "Strengths."  (R. 746).  However, a statement that a claimant is unable to work is an issue reserved to the Commissioner, has been determined by the Commissioner to

be "inherently neither valuable nor persuasive," and the SSA "will not provide any analysis about how [it] considered such evidence in [its] determination or decision, even under § 404.1520c." 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3). Plaintiff has shown no error in the ALJ's consideration of Ms. Reynolds treatment notes.

### D.   The Medical Opinions

As Plaintiff suggests, Dr. Athey, Dr. Boyenga, Dr. McMasters, and Dr. Mintz each provided medical opinions. (Pl. Br. 22-30). The ALJ evaluated the persuasiveness of each of these opinions. (R. 41-43).

Plaintiff claims the ALJ erred in evaluating Dr. Athey's opinion because his explanation is internally inconsistent, because he misunderstood the relationship between Dr. Athey and Plaintiff, and because Dr. Athey's recommendation to pursue disability is not necessarily inconsistent with his recommendation to also pursue employment. (Pl. Br. 23-24). He claims the ALJ erred in evaluating Dr. Boyenga's and Dr. McMaster's opinions for two reasons. First, he claims the ALJ did not recognize and evaluate the material differences between the two opinions. Id. at 25-26 (citing Gaye Raynae A. v. Saul, No. CV 20-2021-JWL, 2020 WL 6059731, at *4 (D. Kan. Oct. 14, 2020). Second, he claims the ALJ did not explain why he did not adopt Dr. McMaster's limitations to a low proximity environment with structure and pre-determined work goals, and both psychologists' limitation against understanding, remembering, and carrying out detailed instructions. Id. at 26-29. Finally, Plaintiff argues the ALJ found Dr. Mintz's opinion unduly persuasive. Id. at 29-30.

The ALJ noted Dr. Athey provided two opinions about a year apart and although the new regulations do not require it, he explained how persuasive he found each opinion separately.  As to the December 2017 opinion, the ALJ explained:

> The opinions and diagnoses are partially persuasive, as they are supported and consistent to the extent that he recommends the claimant continue to seek work and can perform unskilled tasks, but the concurrent recommendation that the claimant seek disability is inconsistent with his recommendation that he pursue employment.  Further, this opinion is vague because no specific functional limitations were provided by Dr. Athey.

(R. 42).  The ALJ went on to explain his evaluation of Dr. Athey's second opinion:

> About a year after his evaluation, in December 2018, Dr. Athey (who had no apparent continuing treatment relationship with the claimant) offered an opinion statement in which he suggested the claimant had moderate to marked limitation in ability to understand, remember, or apply information; moderate limitation in interacting with others; marked limitation in concentrating, persisting, or maintaining pace; and extreme limitation in adapting or managing oneself.  He also suggested the claimant would have 10% to 15% limitation in all aptitudes and abilities needed to do unskilled work activity.  Dr. Athey also suggested the claimant would be absent at least four times a month due to his symptoms.  This opinion is only partially persuasive to the extent it describes moderate limitations in functioning.  Otherwise, it is unpersuasive, as the suggestion of marked/extreme limitations are not consistent with the claimant's extensive activities of daily living, including taking care of a dog, no problems with personal care, preparation of simple meals, mowing the lawn, driving (earning a driver license and passed the written and driving tests), ability to handle savings account/money orders with supervision from parents, use social media, and go to church and movies.  He also testified he graduated high school in special education, was working at McDonald's part-time until he "chooses" to work fulltime; was able to live with a roommate but has previously lived alone; goes to stores 3-4 times a week and can figure out what to pay and whether cashier gave correct change; ability to clean (sweeping/dishes/laundry); reads magazines, mystery/missing person books, and Internet news.  Such evidence is contrary to marked or extreme learning difficulties, as well as Dr. Athey's opinion that the claimant would be absent 4 or more days a month.  Furthermore, Dr. Athey's contact with the claimant is very limited and he only saw the claimant briefly for

evaluation, establishing no treatment relationship and was unaware of what medications the claimant was taking.

Id. (citations omitted) (emphases added).

Plaintiff's argument (that the ALJ's evaluation of Dr. Athey's opinions is inconsistent) misunderstands the ALJ's decision and is not supported by the evidence. Plaintiff asserts, "The ALJ discounted Dr. Athey's findings of marked limitations in the opinion section of the decision (Tr. 42) but elsewhere adopted Dr. Athey's opinion as to marked limitations in adaptation (Tr. 37)." (Pl. Br. 23). Contrary to Plaintiff's assertion, Dr. Athey opined extreme limitations in "Adapting in the workplace" and in "Managing oneself in the workplace" (R. 812, 927) as the ALJ noted. (R. 42). Plaintiff appeals to the ALJ's statement that he found Plaintiff more limited than did Dr. Boyenga and Dr. McMaster because "the medical record also supports a finding of marked limitations in adaptation consistent with opinion of Dr. Athey." Id. at 43. Even here, the ALJ did not state he adopted Dr. Athey's adaptation limitation, but that the medical record supports marked limitations in adaptation. In his step three discussion, the ALJ explained his finding that the record evidence supported marked limitations in the ability to adapt and manage oneself. (R. 37-38). In context, the ALJ found the record supports marked limitations in the ability to adapt and manage oneself and found both Dr. Athey's opinion regarding extreme limitations and Dr. Boyenga's and Dr. McMaster's opinions regarding moderate limitations were not persuasive—and reached a decision in the middle ground.

Plaintiff's argument that the ALJ erred in analyzing Dr. Athey's relationship with Plaintiff fares no better. He argues,

> Dr. Athey visited with [Plaintiff] on 11/28, 11/29, 11/30/17, as well as an
> 11/22/17 consultation with his parents. Dr. Athey conducted supplemental
> interviews with [Plaintiff] and his parents on 12/1 and 12/4/17. (Tr. 598).
> Dr. Athey's evaluation and testing was not simply a brief one-time
> evaluation.

(Pl. Br. 23). Plaintiff's argument does not contradict the ALJ's discussion. Although the

ALJ stated Dr. Athey's evaluation was conducted "on December 9, 2017 as a condition

of the bond by which he was released from jail," that is merely the date of Dr. Athey's

report, and on the very first page of the report Dr. Athey detailed his meetings and

consultation with both Plaintiff and his parents. (R. 598). The ALJ did not find Dr.

Athey's evaluation consisted of a brief, one-time visit. Rather, he noted Dr. Athey "only

saw the claimant briefly for evaluation, establishing no treatment relationship

and was unaware of what medications the claimant was taking," id. at 42, recognizing the

brevity of the relationship, not a one-time visit. Moreover, the ALJ noted Dr. Athey also

had interviews with Plaintiff's parents. (R. 41). To the extent Plaintiff complains of the

ALJ's statement that Dr. Athey "had no apparent continuing treatment relationship with

the claimant," id. at 42, when he completed his opinion statement one year later in

December 2018, Plaintiff points to no contrary evidence, and the court finds none. To the

extent Plaintiff may be suggesting there was a treatment relationship in 2017, the record

does not bear that out and that fact would be merely one factor under the new

regulations—and not one of the two most important factors. The opinion of a treating

source is given no preferential weight under the new regulations and opinions are not to

be weighed one against another.

Finally, there was no error in the ALJ's finding Dr. Athey's recommendation that Plaintiff seek disability inconsistent with his recommendation that Plaintiff pursue employment.  As Plaintiff points out in his Brief, part-time work is not, in every case, inconsistent with disability.  (Pl. Br. 24) (citing Degan v. Barnhart, 314 F. Supp. 2d 1077, 1087 (D. Kan. 2004); and Chisholm v. Colvin, No. 13-1276-SAC, 2014 WL 4755481, at *6 (D. Kan. Sept. 24, 2014)).  However, disability, within the meaning of the Act and regulations is defined as, "the inability to do any substantial gainful activity."  20 C.F.R. §§ 404.1505, 416.905.  Therefore, within the meaning of the Act it is inconsistent to suggest an individual should both seek disability and pursue employment, even though some employment may not constitute substantial gainful activity within the meaning of the Act.  Plaintiff has shown no error in the ALJ's evaluation of Dr. Athey's opinions.

Regarding Dr. Boyenga's and Dr. McMaster's opinions,[3] Plaintiff acknowledges that "Dr. McMaster identified limitations very similar to Dr. Boyenga."  (Pl. Br. 25).  But he argues that there are "meaningful differences" between the two psychologists' finding which the ALJ did not resolve—requiring remand.  Plaintiff's argument focuses on differences in the ratings the psychologists provided in the individual mental abilities, and in different wording they used in their narrative findings than were in the ALJ's RFC assessment, and in his explanation of findings as quoted below.

---

[3] As noted above in discussing the standard for evaluating opinion evidence, the findings of state agency psychological consultants are more correctly called prior administrative medical findings.  20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).  However, they are evaluated in the same manner and by the same standards as medical opinions and are commonly called medical opinions.  The court follows the common practice here.

State agency psychological consultants Dr. Boyenga and Dr. McMaster concluded the claimant had moderate limitation in ability to understand, remember, or apply information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself.  They concluded the claimant retains the ability to understand and remember simple Instructions [sic] and carry out 1-2 step instructions, with structure and predetermined work goals, with at least occasional social contact with the public/coworkers/supervisors.  These opinions are partially persuasive because they are supported by the medical record that shows severe impairments that limit.  However, the medical record also supports a finding of marked limitations in adaptation consistent with opinion of Dr. Athey.

(R. 43) (citations omitted).

I have determined that the claimant retains the residual functional capacity for work at all exertional levels.  However, the claimant's anxiety, ADD, learning disorder, bipolar disorder, depression, intellectual disorder (mild), and impulse control disorder cause moderate difficulties with understanding, remembering, or applying information; moderate difficulties with concentration, persistence or maintain pace; and marked difficulties in [the mental functional area] adapt and manage oneself that result in limitations, including able to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks in a work environment with no fast paced production requirements involving simple work-related decisions, and with only occasional judgment and work place changes.  Further, the claimant's severe mental impairments also cause moderate difficulties with their ability to interact with others that result in limitations, including can occasionally respond to and have interaction with supervisors, coworkers and the general public.

Id. at 45.

As the ALJ noted, both Dr. Boyenga and Dr. McMaster found Plaintiff moderately limited in all four broad mental functional areas.  (R. 129, 178).  Dr. Boyenga provided his Mental RFC narrative in a single narrative summary:

A. Understanding and Memory - The claimant retains the ability to understand and remember simple instructions.  The assessment done in the

remote past indicating an intellectual disorder is not consistent with the documentation in file.

B. Sustained Concentration and Persistence - The claimant can carry out simple work instructions.  He can maintain adequate attendance and sustain an ordinary routine without special supervision.

C. Social Interaction - The claimant can interact adequately with peers and supervisors in a work setting where social interaction is not a primary job requirement.

D. Adaptation - The claimant can adapt to minor changes in a work setting.

(R. 134).  Dr. McMaster, on the other hand summarized her findings at the end of

each section, and restated her understanding and memory finding in an additional

explanation at the end of her assessment.  In the quotes below, the court uses Dr.

McMaster's spelling, punctuation, and grammar.  She found: understanding and

memory, "Clmt is capable of, at least, 1-2 step instructions," (R. 182); sustained

concentration and persistence, "Clmt is capable of, at least, 1-2 step instructions;

may do best in low proximity environment;" social interaction, "Clmt is capable

of, at least, occasional contact with gp [(general public)], co-workers,

supervisors," id., 183; adaptation, "Will require structure, pre-determined work

goals;" additional explanation, "Understanding and Memory - The claimant retains

the ability to understand and remember simple instructions.  The assessment done

in the remote past indicating an intellectual disorder is not consistent with the

documentation in file."  Id., 184.

The court finds no meaningful difference suggested by Plaintiff's arguments.  In a

rather obtuse and hard-to-follow argument Plaintiff looks to the psychologists' findings

of limitations in the twenty individual mental abilities making up the four broad mental

functional areas and argues that different findings regarding the individual mental abilities create a meaningful difference between the opinions which should have been addressed by the ALJ. But that is not the case. A mere difference in semantics does not itself produce an ambiguity or material inconsistency which must be addressed by the ALJ. Moreover, each psychologist provided a narrative explanation of his or her consideration of the relevant individual mental abilities culminating in his or her opinion regarding Plaintiff's limitations in the four broad mental functional areas as quoted above. The issue is whether there are ambiguities or material inconsistencies between the psychologists' opinions in the four broad mental areas which should have been addressed by the ALJ. And the particular question is not whether Plaintiff can understand the opinions to be inconsistent or ambiguous, but whether the ALJ's understanding of the opinions can be understood as consistent and unambiguous.

Plaintiff argues a meaningful difference results from Dr. McMaster finding Plaintiff moderately limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes whereas Dr. Boyenga found him not significantly limited in this ability. However, this ability is in the broad mental functional area of social interaction. As quoted above, in this area Dr. McMaster found "Clmt is capable of, at least, occasional contact with gp [(general public)], co-workers, supervisors." (R. 183). Dr. Boyenga found, "The claimant can interact adequately with peers and supervisors in a work setting where social interaction is not a primary job requirement." Id. at 134. Contrary to Plaintiff's claim, the court finds no material difference in these opinions regarding social interaction limitations.

Plaintiff suggests a meaningful difference in the psychologists' opinions regarding sustained concentration and persistence because Dr. McMaster opined Plaintiff "is capable of, at least 1-2 step instructions, [and] may do best in low proximity environment." Id. 183. In this area, Dr. Boyenga opined, "The claimant can carry out simple work instructions. He can maintain adequate attendance and sustain an ordinary routine without special supervision." Id. 134. To the extent a "low proximity environment" relates to concentration and persistence, Dr. Boyenga found Plaintiff's attendance would be adequate and he could sustain an ordinary routine. And to the extent that low proximity relates to social interaction, he found Plaintiff needed "a work setting where social interaction is not a primary job requirement." (R. 134). Moreover, Dr. McMaster did not opine Plaintiff must not work in proximity to co-workers but that Plaintiff may do best in a low proximity environment. Plaintiff has shown no material difference requiring explanation in the psychologists' opinions regarding this area.

In his final argument of a meaningful difference, Plaintiff suggests a difference between Dr. McMaster's adaptation limitation that Plaintiff "[w]ill require structure, [and] predetermined work goals" (R. 184), and Dr. Boyenga's limitation to "adapt to minor changes in a work setting." Id. at 134. Again, Plaintiff has shown no material difference in these opined limitations. Keeping in mind that this mental functional area relates to adaptation, a workplace or work duties with only minor changes is "structured" when compared to one with many changes, and a job with flexible, changing, or indeterminate work goals is certainly one involving more than minor changes. Again, the court finds no material difference requiring explanation by the ALJ.

27

Plaintiff also argues the ALJ failed to explain material inconsistencies between the state agency psychologists' opinions and the RFC assessed.  Plaintiff first argues that "[t]he ALJ unreasonably discarded Dr. McMaster's limitations to a low proximity environment with structure and pre-determined work goals."  (Pl. Br. 26) (bold omitted). This argument fails for the same reasons the arguments above failed.  With regard to mental limitations, the ALJ assessed Plaintiff with the following abilities:

> to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks in a work environment with no fast paced production requirements involving simple work-related decisions, and with only occasional judgment and work place changes.  The claimant can occasionally respond to and have interaction with supervisors, coworkers and the general public.

(R. 39-40).  Similar to the discussion above, to the extent a "low proximity environment" relates to concentration and persistence, the limitations to uninvolved instructions; simple, routine, and repetitive tasks; no fast paced production requirements; simple work-related decisions; and only occasional judgment account for Plaintiff's concentration and persistence limitations.  And to the extent that low proximity environment relates to social interaction, the limitation to only occasional response to and interaction with supervisors, coworkers, and the public accounts for that limitation.  An ALJ is not required to use language used by the state agency psychologists or language preferred by Plaintiff.  Rather, Plaintiff must show that the evidence compels using his view, and he has not done so here.  Plaintiff has not shown that Dr. McMaster's findings were materially different than Dr. Boyenga's findings, and consequently he has not shown that the ALJ's assessment "unreasonably discarded" Dr. McMaster's limitations.  The same

result obtains with regard to Dr. McMaster's findings regarding Plaintiff's adaptation requiring structure and pre-determined work goals, and the court will not repeat its analysis from above.

In his final argument of error in the ALJ's evaluation of the state agency psychologists' opinions, Plaintiff argues the ALJ failed to account for the psychologists' opinions that Plaintiff <u>cannot</u> understand, remember, and carry out <u>detailed</u> instructions because he assessed Plaintiff with the ability to carry out <u>detailed</u> but uninvolved instructions.  (Pl. Br. 28).  This is so, in Plaintiff's view, because the jobs identified by the vocational expert (VE) require level two reasoning but "Dr. McMaster suggested one to two step instructions, which are 'specifically within the purview of level one reasoning under the DOT.'"  (Pl. Br. 28) (quoting <u>C. P. v. Saul</u>, No. 19- 1256-JWB, 2020 WL 6544582, at *6 (D. Kan. Nov. 6, 2020)).  Plaintiff also cites <u>C. P.</u> for the proposition that "there may exist a potential conflict between level two reasoning and RFC limitations for carrying out simple instructions (regardless of one to two step instructions)."  <u>Id.</u>  He argues the ALJ did not explain why he rejected the psychologists' limitations to simple or one to two step instructions.  <u>Id.</u> at 29.

Plaintiff has not demonstrated the ALJ rejected the psychologists' opinions in this regard.  First, Plaintiff misunderstands Dr. McMaster's opinion.  She did not opine that Plaintiff is limited to one to two step instructions, but that he "is capable of, <u>at least</u> 1-2 step instructions."  (R. 182, 183).  Moreover, Plaintiff does not explain how he reached the conclusion that the ability to understand, remember, and carry out simple work instructions as Dr. Boyenga opined and the ability to understand, remember, and carry

29

out at least 1-2 step instructions as Dr. McMaster opined conflicts with the ability to carry

out <u>detailed but uninvolved</u> instructions in the performance of simple, routine and

repetitive tasks in a work environment with no fast paced production requirements

involving simple work-related decisions, and with only occasional judgment and work

place changes.  Other than the case he cites, the conclusion appears to be based on the use

of the adjective "simple," to describe instructions in the psychologists' opinion and the

use of the adjective "detailed but uninvolved" among others, to describe instructions in

the RFC assessed.  Plaintiff relies on the fact <u>C. P. v. Saul</u> appears to limit the capability

for 1-2 step instructions to occupations requiring only reasoning level 1 (and apparently

on the fact that the ability to carry out detailed but uninvolved instructions requires

reasoning level 2).

The proper resolution of this issue requires an understanding of the Tenth Circuit's

consideration of reasoning level in Social Security decisions. In 2005 the court decided

<u>Hackett</u>, 395 F.3d 1168.  In <u>Hackett</u>, the court found an apparent conflict between an

RFC limitation to "simple and routine work tasks" and a job requiring a reasoning

developmental level of 3."  <u>Id.</u> 395 F.3d at 1176.  <u>Hackett</u>, is a published opinion of the

Tenth Circuit and is therefore precedent binding on this court.  This court has recognized

<u>Hackett's</u> finding of an apparent conflict between the "inability to perform more than

simple and repetitive tasks and the level-three reasoning," 395 F.3d at 1176, and has

remanded in such cases.  <u>See, e.g.</u>, <u>Carolyn J. S. v. Saul</u>, No. 18-4049-JWL, 2019 WL

2523575, at *3 (D. Kan. June 19, 2019).  However, the <u>Hackett</u> court also noted that level

2 reasoning requires applying "commonsense understanding to carry out detailed but

30

uninvolved written or oral instructions [and d]eal with problems involving a few concrete

variables in or from standardized situations" and appears more consistent with an RFC

including "the attention, concentration, persistence and pace levels required for simple

and routine work tasks."  Id. (quoting (DOT, App'x C, Pt. III) available at:

https://occupationalinfo.org/appendxc_1.html#III (last visited, December 10, 2021).  This

court has repeatedly and consistently recognized that the facts of Hackett do not apply in

cases dealing with jobs involving level-two reasoning.  See, e.g., Suzanne I. v. Saul, No.

CV 19-1213-JWL, 2020 WL 2747184, at *5 (D. Kan. May 27, 2020); Kathleen B. v.

Saul, No. CV 19-1219-JWL, 2020 WL 3076598, at *7 (D. Kan. June 10, 2020); Lesley

A. H. v. Saul, No. CV 19-2509-JWL, 2020 WL 3545626, at *15 (D. Kan. June 30, 2020);

Kyle Edward Victor G. v. Saul, Civ. A. No. 19-2518-JWL, 2020 WL 3960422 (D. Kan.

July 13, 2020).

    This court's rationale has been consistent throughout.  Plaintiff's argument that the

ability to understand, remember, and carry out simple instructions conflicts with the

ability to carry out detailed but uninvolved instructions in the performance of simple,

routine and repetitive tasks rests on the assumption that "the ability to understand,

remember, and carry out simple instructions" in an RFC can never encompass sufficient

ability "to carry out detailed but uninvolved instructions" in an RFC and within the

meaning of  GED reasoning development level 2.  But Plaintiff presents no appropriate

authority for his assumption.  The DOT explains that

> General Educational Development embraces those aspects of education
> (formal and informal) which are required of the worker for satisfactory job
> performance.  This is education of a general nature which does not have a

recognized, fairly specific occupational objective.  Ordinarily, such
education is obtained in elementary school, high school, or college.
However, it may be obtained from experience and self-study.

The GED Scale is composed of three divisions:  Reasoning Development,
Mathematical Development, and Language Development.

(DOT, App'x C, Pt. III) available at:  https://occupationalinfo.org/appendxc_1.html#III

(last visited December 10, 2021).

Thus, GED deals with the amount of education (formal or informal) an occupation

requires, "reasoning development" is one of three divisions of educational development,

and "02 level reasoning development" is the second least demanding of 6 reasoning

development levels.  While it might be reasonable for a layman, an attorney, or a court to

conclude from the DOT definition of 02 level reasoning development that the educational

development necessary "to carry out detailed but uninvolved written or oral instructions"

is greater than the mental abilities "to understand, remember, and carry out simple,

routine, and repetitive tasks in a work environment with no fast-paced production

requirements and involving only simple work-related instructions," Plaintiff cites no

authority requiring it.  Reasoning level in the DOT relates to the educational background

a particular occupation requires whereas mental abilities in a Mental Residual Functional

Capacity Assessment represent 20 mental functional abilities grouped in 4 categories—

Understanding and Memory, Sustained Concentration and Persistence, Social Interaction,

and Adaptation.  POMS DI 24510.060(B)(2).  The ability to understand and remember

instructions and the ability to carry out instructions fall within the categories of

Understanding and Memory, and of Sustained Concentration and Persistence,

respectively.  (R. 62, 74, 89, 102); see also POMS DI 24510.060(B)(2).  While educational requirements and mental abilities intuitively appear to be related, Plaintiff has shown no direct correlation and has not shown that the Mental RFC assessed by the ALJ involves greater ability than opined by the state agency psychologists.  This conclusion is reinforced by the fact the regulations define unskilled work as work "a person can usually learn to do … in 30 days, and little specific vocational preparation and judgment are needed."  20 C.F.R. §§ 404.1568, 416.968.  Plaintiff may not create a conflict based upon his or his attorney's lay reading of the DOT and the court may not impose its lay view of the evidence, nor its evaluation of the evidence over that of the ALJ.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax v. Astrue, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

In his final medical opinion argument, Plaintiff claims, "The ALJ afforded undue persuasiveness to Dr. Mintz's opinion."  (Pl. Br. 29) (bold omitted).  Plaintiff explains the evidence which in his view detracts from using Dr. Mintz's opinion, but he does not point to any RFC limitations assessed which was based on Dr. Mintz's opinion and for which the evidence precludes a finding or compels a different finding.  As Plaintiff suggests, the ALJ found Dr. Mintz's opinion was well-supported, but Plaintiff does not show error in this finding.  While Plaintiff clearly believes the ALJ should have relied on other facts to

discount Dr. Mintz's opinion, the evidence does not compel it, the court may not reweigh the evidence and substitute its judgment for the Commissioner, and even if it were to reweigh the evidence, it sees no basis therein to change the decision.

Having thoroughly reviewed Plaintiff's arguments, the court finds no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision. Dated December 10, 2021, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**